JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, City of Cleveland ("the City"), brings this appeal challenging the trial court's denial of summary judgment. Because this appeal involves an issue of governmental immunity, the denial constitutes a final appealable order. See R.C. 2744.02(C). After a thorough review of the record, and for the reasons set forth below, we reverse.
 {¶ 2} On September 6, 2007, at approximately 1:00 p.m., Cleveland paramedics, Matthew Nowak and Michael Johnson, were responding to an emergency dispatch in Cleveland, Ohio. Nowak was driving Cleveland EMS vehicle Medic 10 ("the Ambulance"), and Johnson was riding in the passenger seat. The paramedics had been dispatched to a residence on Stoughton Road in the City, and the Ambulance's lights and sirens were activated as Nowak drove to the destination.
 {¶ 3} Nowak was traveling southbound on East 116th
Street as he approached the intersection at Shaker Boulevard. Traffic on East 116th Street had a red light in both directions. In the police report, Nowak stated that he was traveling at a rate of speed of 35 m.p.h. prior to entering the intersection and that he slowed down to approximately 15 m.p.h. as he traveled through the intersection. Nowak further stated that he looked both ways before proceeding through the intersection, that he honked the horn, and that he saw all cars had yielded to the Ambulance. *Page 4 
 {¶ 4} As Nowak proceeded through the south portion of the intersection, where 116th Street intersects the eastbound lanes of Shaker Boulevard, the Ambulance was struck by a vehicle driven by appellee, David Perlberg ("Perlberg"). According to the police report, the front passenger side of Perlberg's vehicle crashed into the rear passenger side of the Ambulance.
 {¶ 5} In his deposition, Perlberg stated that he did not see the Ambulance until it was directly in front of him, nor did he hear its siren. Perlberg stated that prior to hitting the Ambulance, he had his windows rolled up because the air conditioning was on; he also stated he was listening to the radio. A witness traveling in the vehicle directly behind Perlberg admitted having heard the Ambulance's siren. Perlberg also stated that there was no way for him to see the Ambulance because of a brick wall that was obstructing his view of traffic heading southbound on East 116th Street.
 {¶ 6} The City's monitoring system indicated that the Ambulance's lights were activated at the time Nowak and Johnson were on emergency dispatch and that the Ambulance was traveling 19 m.p.h. just before impact.
 {¶ 7} Perlberg suffered minor injuries to his lower back and was transported to University Hospitals after the accident. On January 25, 2008, Perlberg filed the instant action against the City for personal injuries he sustained. In its answer, the City asserted the affirmative defense of immunity under R.C. Chapter 2744. On June 27, 2008, the City filed its motion for *Page 5 
summary judgment. Perlberg filed a brief in opposition. On July 25, 2008, the trial court denied the City's motion for summary judgment. The City filed this timely appeal.
 Review and Analysis {¶ 8} The City raises one assignment of error for our review.
 {¶ 9} "I. Because the City of Cleveland is entitled to immunity from plaintiff David Perlberg's complaint under R.C. Chapter 2744, the trial court erred in denying the City's motion for summary judgment."
 {¶ 10} In its sole assignment of error, the City argues it is entitled to summary judgment because R.C. 2744.02 grants the City immunity for injuries resulting from its performance of governmental and proprietary functions.
 {¶ 11} "Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
 {¶ 12} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Page 6 
 Celotex Corp. v. Catrett (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115,526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party.Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 13} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media (1991),59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstratethe absence of a genuine issue of fact or material element of thenonmoving partys claim." Id. at 296. (Emphasis in original.) The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ. R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 14} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Commrs. (1993),87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ. R. 56(C). "The reviewing court evaluates the record *** in a light most favorable to the nonmoving party ***. [T]he motion must be overruled if reasonable minds could find for the party opposing the *Page 7 
motion." Saunders v. McFaul (1990), 71 Ohio App.3d 46, 50,593 N.E.2d 24; Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741,607 N.E.2d 1140.
 {¶ 15} In Greene Cty. Agricultural Soc. v. Liming, 89 Ohio St.3d 551,2000-Ohio-486, 733 N.E.2d 1141, the Ohio Supreme Court set out the standard for sovereign immunity. "Ohio Rev. Code Ann. Ch. 2744 sets out the method of analysis, which can be viewed as involving three tiers, for determining a political subdivision's immunity from liability. First, Ohio Rev. Code Ann. § 2744.02(A)(1) sets out a general rule that political subdivisions are not liable in damages. In setting out this rule, § 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of Ohio Rev. Code Ann. § 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in § 2744.02(B) apply. Furthermore, if any of § 2744.02(B)'s exceptions are found to apply, a consideration of the application of Ohio Rev. Code Ann. § 2744.03 becomes relevant, as the third tier of analysis." Id. at 556-557.
 {¶ 16} R.C. 2744.01 (C) (2) defines a "governmental function" to include: "(a) The provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection; ***." *Page 8 
 {¶ 17} R.C. 2744.02(B) (1) through (5) details when a political subdivision is not immune. Specifically, R.C. 2744.01(B)(1)(c), the subsection which is relevant to this case, states: "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows: (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability: *** (c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued pursuant to Chapter 4507. of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code."
 {¶ 18} Perlberg argues that because the Ambulance was not transporting a patient at the time of the accident, there were no exigent circumstances warranting Nowak's failure to yield at a red light. This argument is without *Page 9 
merit. Paramedics are on an emergency call if they are dispatched to an emergency. See Bostic v. Cleveland (Jan. 31. 2002), Cuyahoga App. No. 79336 ("R.C. 2744.02(B)(1)(c) is intended to extend immunity based on the initial nature of the call"). The plain language of the statute supports this proposition where it states "while responding to or completing a call for emergency medical care or treatment."
 {¶ 19} There is no dispute Nowak and Johnson were dispatched and thus were responding to a call for emergency medical care. The fact that they had not yet reached their destination is irrelevant.
 {¶ 20} Perlberg also argues that Nowak's operation of the Ambulance constituted willful and wanton misconduct. He bases this on his own opinion, as set forth in his affidavit. He also argues that Nowak failed to comply with R.C. 4511.03. We disagree.
 {¶ 21} "`Wanton misconduct' has been defined as `the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor.' `Willful misconduct' is characterized as `an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the *Page 10 
likelihood of resulting injury." Sparks v. Cleveland, Cuyahoga App. No. 81715, 2003-Ohio-1172.
 {¶ 22} R.C. 4511.03 states: "(A) The driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety to traffic, but may proceed cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway."
 {¶ 23} Nowak stated that his lights and sirens were activated; he honked as he proceeded through the intersection; he was traveling at approximately 15 m.p.h. through the intersection, even though the posted speed limit was 35 m.p.h.; and he did not see any traffic approaching on Shaker Boulevard.
 {¶ 24} Jim Willson, a Commander of EMS for the City of Cleveland, stated that based on the automated vehicle location system in operation by the EMS Division, the Ambulance had its lights activated; Division policy with regard to ambulance speed is that a driver travel no more than 10 m.p.h. over the posted speed, including through intersections; the Ambulance was traveling at 19 m.p.h. before it came to a rest; and that the satellite monitor showed that Nowak was operating the Ambulance in full compliance with Division policy.
 {¶ 25} At his deposition, Perlberg stated he was traveling in his vehicle at 35 m.p.h., eastbound on Shaker Boulevard; his windows were rolled up, and the air conditioning and radio were on; he knew of the visual obstruction (a brick *Page 11 
wall) of traffic traveling on East 116th street, but he did not slow down because he had a green light; and he did not hear sirens or see the Ambulance until he hit it. Perlberg also acknowledged that the driver in the vehicle behind himheard the Ambulance's siren.
 {¶ 26} Despite Perlberg's deposition testimony that he could not see the Ambulance or hear its siren, we do not find the facts preclude a defense of immunity for the City. See Sparks, supra ("Just because a particular element of a claim or defense involves a question of fact does not automatically preclude the claim or defense from a determination under summary judgment").
 {¶ 27} The facts do not support a finding that Nowak engaged in willful and wanton misconduct or that he failed to exercise any care to those around him. We also find that Nowak complied with the requirements set forth in R.C. 4511.03. Thus we find that the trial court erred in denying the City summary judgment, and that the City is entitled to judgment as a matter of law.
 {¶ 28} The City's sole assignment of error is sustained.
 {¶ 29} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant recover of said appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. *Page 12 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, P.J., and ANN DYKE, J., CONCUR. *Page 1