[Cite as *Williams v. Stefka*, 2012-Ohio-353.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96145**

## KIANTE WILLIAMS

PLAINTIFF-APPELLANT

vs.

## ROBERT J. STEFKA, JR., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:
REVERSED AND REMANDED**

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case Nos. CV-571438 and CV-592818

**BEFORE:**   E. Gallagher, J., Kilbane, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:**   February 2, 2012

**ATTORNEY FOR APPELLANT**

Shaun H. Kedir
Seaman Garson, LLC
1600 Rockefeller Building
614 Superior Avenue, N.W.
Cleveland, Ohio    44113

**ATTORNEYS FOR APPELLEES**

**Robert J. Stefka**

Beverly A. Adams
Davis & Young
1200 Fifth Third Center
600 Superior Avenue, East
Cleveland, Ohio    44114-2654

**City of Cleveland**

Barbara A. Langhenry
Director of Law
Linda M. Applebaum
Assistant Director of Law
City of Cleveland
601 Lakeside Ave., Room 106
Cleveland, Ohio    44114-1077

David M. Douglass
Sean F. Berney
Douglass & Associates Co., LPA
4725 Grayton Road
Cleveland, Ohio    44135

EILEEN A. GALLAGHER, J.:

**{¶ 1}** Appellant, Kiante Williams, appeals from the judgment of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of appellee city of Cleveland ("the City") on the basis of governmental immunity pursuant to R.C. 2744.02. Appellant also appeals decisions by the trial court allowing Robert J. Stefka, Jr. to introduce evidence regarding the city's violation of its statutory duties and allowing a jury instruction regarding same. After a thorough review of the record, and for the reasons set forth below, we reverse.

**{¶ 2}** This case arises out of an automobile accident involving a vehicle driven by Stefka and a city of Cleveland ambulance in which appellant was a passenger. On the evening of April 26, 2005, appellant called for an ambulance because she was experiencing labor pains. A city of Cleveland ambulance, driven by city of Cleveland Emergency Medical Services employee, Glenn Burks, responded and began the transport of appellant to Metrohealth Medical Center ("MetroHealth").

**{¶ 3}** The accident occurred at the intersection of Union Avenue and East 75th Street in Cleveland, Ohio. The city's ambulance was proceeding westbound on Union Avenue prior to the accident. Burks testified that he activated both his lights and siren upon departing with appellant and never turned off either as the ambulance was en route to MetroHealth. Appellant testified that the ambulance's lights were activated during the trip but the siren was not.

{¶ 4} The speed limit on Union avenue is 35 m.p.h. Burks testified that an EMS vehicle, traveling in an emergency run, is allowed to proceed approximately ten miles over the designated speed limit. A GPS tracking device reported the ambulance's speed to be 43 m.p.h., ten seconds prior to the collision. Burks testified that his m.p.h. speed was "in my 40s or 30s" but he later testified that he could not approximate his speed just prior to entering the intersection where the accident occurred. Appellant testified that during the ambulance ride she could feel the ambulance slow down and pause at intersections but that the ambulance did not pause just prior to the accident.

{¶ 5} As the ambulance proceeded down Union, Burks did not see any other vehicles on the street. Burks testified that it was dark as he approached the intersection of Union Avenue and East 75th Street and that he was able to clearly see traffic lights and approaching vehicles. The police report from the accident indicates that Burks approached a red light at the intersection. Stefka was driving a 2000 Jeep Cherokee northbound on East 75th approaching the intersection at Union Avenue and had a green light. Burks testified that as he traveled down Union approaching the intersection he looked in both directions down East 75th and saw no vehicles approaching. Burks did not see Stefka's vehicle until he was halfway through the intersection at which point they collided. Stefka similarly testified that he did not see the ambulance until he was in the middle of the intersection.

{¶ 6} The police report from the accident indicates that a "view obstruction,"

identified by Stefka as a car lot, existed between the two vehicles on the Southeast corner of East 75th and Union Avenue. The police report describes that a 5'10" chain link fence runs roughly 60 feet east on Union Avenue and south down East 75th. The police report explains, "[t]he vehicles east of this fence line created a view obstruction." Stefka also testified that cars were in this lot the night of the accident.

{¶ 7} The City filed a civil suit against Stefka on September 1, 2005 seeking to recover for property damage stemming from the accident. (CV-571438.) Appellant filed a separate civil suit against both the City and Stefka for personal injuries resulting from the accident. (CV-592818.) Appellant's complaint alleged that (1) the City was negligent in the operation of its ambulance and (2) Stefka was negligent in the operation of his vehicle. The City and Stefka filed cross-claims against each other for indemnity and contribution based on appellant's claims. The two cases were consolidated and the City filed a motion for summary judgment on February 8, 2007, seeking immunity from appellant's negligence claim and Stefka's claims for indemnity and contribution. On November 9, 2010, the trial court granted the City's motion for summary judgment against both appellant and Stefka.

{¶ 8} The case proceeded to a jury trial on the claims of both appellant and the City against Stefka and the jury returned verdicts in favor of Stefka. Appellant brought the present appeal asserting the three assignments of error in the appendix to this opinion.

{¶ 9}  Appellant's first assignment of error states:

The trial court erred in granting summary judgment for the Defendant City of Cleveland because [appellant's] claims are not barred by R.C. 2744 and genuine issues of material fact exists [sic] which may only be properly evaluated by a jury.

{¶ 10} Our review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor.  *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 696 N.E.2d 201 (1998).   The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

{¶ 11} In *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 2000-Ohio-486, 733 N.E.2d 1141, the Ohio Supreme Court set out the standard for sovereign immunity.

Ohio Rev.Code Ann. Ch. 2744 sets out the method of analysis, which can be viewed as involving three tiers, for determining a political subdivision's immunity from liability.  First, Ohio Rev.Code Ann. §2744.02(A)(1) sets

out a general rule that political subdivisions are not liable in damages. In setting out this rule, §2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of Ohio Rev.Code Ann. §2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in §2744.02(B) apply. Furthermore, if any of §2744.02(B)'s exceptions are found to apply, a consideration of the application of Ohio Rev.Code Ann. §2744.03 becomes relevant, as the third tier of analysis. *Id.* at 556-557, 733 N.E.2d 1141.

{¶ 12} R.C. 2744.01(C)(2) defines a "governmental function" to include: "(a) The provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection; * * *."

{¶ 13} R.C. 2744.02(B)(1)(c), is the subsection applicable to the present case and states in pertinent part:

(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows: (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability: * * * (c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506 or a driver's license issued pursuant to Chapter 4507 of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.

{¶ 14} Specifically, with regard to an EMS operated ambulance, this court has previously stated that

> R.C. 2744.02(B)(1)(c) provides a complete defense to a city for the negligent operation of an EMS motor vehicle if three criteria are met: (1) the employee, validly licensed to drive, is operating the vehicle in response to an emergency call; (2) the operation of that vehicle did not constitute willful or wanton misconduct; and (3) the operation complies with R.C. 4511.03. *Harris v. Kennedy*, 116 Ohio App.3d 687, 690, 689 N.E.2d 53 (1996).

{¶ 15} Appellant first argues that the trial court erred in granting summary judgment because genuine issues of material fact exist in regard to whether Mr. Burks's conduct qualifies as willful or wanton misconduct.

> "Wanton misconduct" has been defined as "the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." "Willful misconduct" is characterized as "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Perlberg v. Cleveland*, 8th Dist. No. 91913, 2009-Ohio-1788, 2009 WL 1019883, at ¶ 21, quoting *Sparks v. Cleveland*, 8th Dist. No. 81715, 2003-Ohio-1172, 2003 WL 1090703.

{¶ 16} In the case sub judice, the record reveals no facts from which reasonable minds could conclude that Mr. Burks's operation of the ambulance constituted willful or wanton misconduct. Furthermore, as the City noted in its motion for summary judgment, appellant failed to allege willful or wanton misconduct in her complaint and failed to move to amend her complaints or move under Civ.R. 15(B) to have the

pleadings conform to the evidence. This court has previously noted that under such circumstances a party is precluded from arguing genuine issues of material fact as to willful and wanton misconduct on summary judgment. *Ohio Bell Tel. Co. v. Digioia-Suburban Excavating, L.L.C.*, 8th Dist. Nos. 89708 and 89907, 2008-Ohio-1409, 2008 WL 802641, at ¶ 36-40. Even if appellant had amended her complaint to add such a claim it would not be appropriate without operative facts to support it. *See e.g. Hodge v. Cleveland*, 8th Dist. No. 72283, 1998 WL 742171 (Oct. 22, 1998) (an amendment to add the phrase "wilful or wanton conduct" to defeat statutory immunity is insufficient without "new allegations of any operative facts which might establish wilful or wanton conduct.") Appellant's argument is without merit in this regard.[1]

---

[1]We note that the city argued in its reply brief in support of its motion for summary judgment that appellant cannot proceed on a negligence theory that the city violated R.C. 4511.03 without allegations of willful or wanton misconduct. The city does not presently advance the same argument on appeal. However, we note that such a position is inconsistent with both the statutory language of R.C. 2744.02(B)(1)(c) and our above quoted three criteria from *Harris*. At least one court has reached the opposite conclusion. In *Behm v. Cincinnati*, 1st Dist. No. C-910865, 1992 WL 336522 (Nov. 18, 1992) the First District Court of Appeals held that the city of Cincinnati was immune under R.C. 2744.02 from negligent violations of R.C. 4511.03 by the city's ambulance drivers. The Court in *Behm* reached this conclusion relying on the Ohio Supreme Court's holding in *Agnew v. Porter*, 23 Ohio St.2d 18, 260 N.E.2d 830 (1970). However, *Agnew* dealt specifically with a political subdivision's immunity from an accident involving a police officer and police vehicle. R.C. 2744.02(B)(1)(a)-(c) provides separate standards for political subdivision immunity depending on if the actor involved is a member of a police department, fire department, or emergency medical service. Unlike the provisions for police and fire employees, R.C. 2744.02(B)(1)(c) provides the additional burden that the political subdivision establish that the emergency medical service member's operation of a motor vehicle complied with R.C. 4511.03 in order for immunity to apply. For a more complete discussion on this topic *see*

{¶ 17} Appellant next argues that summary judgment was improper in this instance because genuine issues of material fact exist as to the third requirement for immunity above, Mr. Burks's compliance with R.C. 4511.03.

{¶ 18} R.C. 4511.03 states:

(A) The driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety to traffic, but may proceed cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway.

{¶ 19} We have previously considered an EMS ambulance driver's compliance with R.C. 4511.03 for purposes of immunity under R.C. 2744.02(B)(1)(c). In *Harris v. Kennedy*, 116 Ohio App.3d 687, 689 N.E.2d 53 (8th Dist.1996), we held that an ambulance driver complied with R.C. 4511.03 where the evidence indicated that prior to colliding with another vehicle in an intersection the ambulance driver applied his brakes, slowed to five to ten m.p.h. prior to bypassing a stop sign and entering the intersection and slid into the intersection on a patch of ice. *Id*. at 690. We also held that a dispute over the driver's operation of the ambulance's siren and signal lights did not raise an issue of material fact as to the driver's compliance with R.C. 4511.03. *Id*. at 690-691.

{¶ 20} In *Zivich v. Northfield*, 9th Dist. No. 24836, 2010-Ohio-1039, 2010 WL 935792, the Ninth District Court of Appeals upheld a trial court's denial of the village's

---

*Schwarzbek v. Wauseon*, 125 Ohio App.3d 736, 709 N.E.2d 570 (6th Dist. 1998).

summary judgment on immunity grounds where a village ambulance collided with another vehicle in an intersection. In *Zivich*, the ambulance driver indicated that as he approached a red light at the intersection he saw the car with which he eventually collided but it appeared to be slowing to yield for the ambulance. *Id*. at ¶ 8. The speed limit on the street traversed by the ambulance was 40 m.p.h. and the ambulance driver stated that he never exceeded the speed limit and further slowed to five to ten m.p.h. as he entered the intersection. *Id*. at ¶ 8. However, an accident reconstruction expert challenged the ambulance driver's reported speed at the time of collision and introduced evidence that a significant view obstruction was present at the intersection that may have prevented one or both drivers from seeing the other. *Id*. at ¶ 13. Under these facts, the Ninth District held that the trial court properly found that a genuine issue of material fact had been raised in regard to the ambulance driver's compliance with R.C. 4511.03. *Id*. at ¶ 14.

{¶ 21} Finally, in *Perlberg*, we considered a case involving an ambulance's intersection collision where the plaintiff asserted that a wall presented a view obstruction which prevented the plaintiff from seeing the ambulance prior to the accident. We rejected the plaintiff's contention that the ambulance driver failed to comply with R.C. 4511.03 because

> [the ambulance driver] stated that his lights and sirens were activated; he honked as he proceeded through the intersection; he was traveling at approximately 15 m.p.h. through the intersection, even though the posted speed limit was 35 m.p.h.; and he did not see any traffic approaching * * *.

" *Id*. at ¶ 23.

{¶ 22} We find the facts of the case sub judice to be distinguishable from the facts presented to this court in *Perlberg*. Both cases involve view obstructions separating the vehicles. However, unlike the ambulance driver in *Perlberg*, there is no indication in the present record that Burks slowed significantly or sounded the horn upon approaching the intersection. Although the police report indicates that Burks slowed prior to entering the intersection, Burks's own deposition testimony provides no details of when or how much Burks slowed down prior to entering the subject intersection. In fact, the City itself incorrectly restated Burks's deposition testimony in its motion for summary judgment, arguing that Burks slowed to *30 to 40 m.p.h. at the intersection.* Burks's deposition testimony provides no such details.

{¶ 23} Based on the view obstruction noted in the police report, the fact that both drivers testified that they did not see the other until the point of collision in the intersection and the unclear speed of the ambulance as it entered the intersection, we find that a genuine issue of material fact exists as to whether Burks slowed down as necessary for safety to traffic under the present circumstances. On the record before us, reasonable minds could conclude that the accident was the product of the car lot view obstruction and Mr. Burks failed to comply with R.C. 4511.03 when presented with this obstruction. As such, a genuine issue of material fact exists as to the City's compliance with R.C. 4511.03. Appellant's first assignment of error is sustained.

**{¶ 24}** Appellant's second assignment of error states:

The trial court erred in overruling objections to Defendant Stefka introducing evidence, testimony, commentary, and arguments during the course of trial disputing whether the City of Cleveland's EMS driver, Mr. Burks, complied with R.C. 4511.03, after previously finding as a matter of law that Mr. Burks complied with R.C. 4511.03.

**{¶ 25}** Appellant argues that the trial court erred in allowing Stefka to relitigate the issue of the City's compliance with R.C. 4511.03 at trial after finding that both appellant and Stefka had failed to raise a genuine issue of material fact as to the matter on summary judgment. We do note that the trial court's rulings at trial denying appellant's motion in limine to the extent it sought to preclude the introduction of evidence challenging the city's compliance with R.C. 4511.03 and permitting the introduction of Stefka's jury instruction #9 relating to the same is logically irreconcilable with the trial court's necessary finding on summary judgment that no genuine issue of material fact existed on this subject. However, based on our disposition of appellant's first assignment of error, a genuine issue of material fact did in fact exist in regard to the City's compliance with R.C. 4511.03 and the trial court properly allowed the parties to contest the matter at trial.

**{¶ 26}** Based on our holding above we find appellant's third assignment of error to be moot.

**{¶ 27}** The judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

It is ordered that appellant recovers from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
MELODY J. STEWART, J., DISSENTS WITH
SEPARATE OPINION

MELODY J. STEWART, J., DISSENTING:

{¶ 28} The key question on whether the city was immune from suit was whether Burks, the ambulance driver, slowed down as necessary for safety to traffic and proceeded through the red stop signal with due regard for the safety of others using the street. R.C. 4511.03(A). I find no issue of material fact that would suggest Burks did not comply with the statute.

{¶ 29} As noted by the majority, the city offered uncontradicted proof that a GPS tracking system showed that the ambulance was traveling 43 m.p.h. just ten seconds

before the accident. Burks testified that he slowed before entering the intersection, a fact that Williams confirmed. Williams testified in deposition that the ambulance slowed down and paused at intersections. In later questioning, Williams said that right before the ambulance impacted with Stefka's car, she felt the ambulance shake from left to right, presumably meaning that it swerved to avoid an impact. The city's counsel referenced this swerving and asked, "prior to that, okay, had the vehicle slowed down?" Williams answered, "yeah."

{¶ 30} Williams's testimony could only lead to the conclusion that, consistent with Burks's testimony, the ambulance had slowed down when it entered the intersection. While it is true that Burks could not give the precise speed he was traveling at the time of the accident, the city's contention that Burks was driving between 30 and 40 m.p.h. is certainly reasonable given that the ambulance was traveling 43 m.p.h. some ten seconds before the impact. By slowing from 43 m.p.h. before the impact, Burks was no doubt traveling between 30 and 40 m.p.h. at the time of the accident, so he fully complied with R.C. 4511.03(A).

{¶ 31} Citing to a police report of an "obstruction," the majority suggests that because neither driver saw the other as they entered the intersection, their respective views must have been impeded by this obstruction, thus creating a question of whether Burks complied with R.C. 4511.03(A) by not slowing even more as he entered the intersection. This conclusion is belied by the police report itself, which described the

"obstruction" as a car lot surrounded by a 5'10" chain link fence. The ambulance was well above six feet in height and there was no evidence that any of the vehicles parked in the lot would block out the view of the much taller ambulance. The height of the ambulance would have made the emergency lights easily visible above the fence and the other vehicles parked in the lot, particularly when it was dark and the emergency lights were no doubt reflecting off nearby buildings. No reasonable trier of fact could find that Burks's view was so obstructed that R.C. 4511.03(A) required him to slow the ambulance even more as it entered the intersection.

Appendix

*Assignment of Error No. 1*:

> The trial court erred in granting summary judgment for the Defendant City of Cleveland because Plaintiff Kiante Williams's claims are not barred by R.C. 2744 and genuine issues of material fact exists which may only be properly evaluated by a jury.

*Assignment of Error No. 2*:

> The trial court erred in overruling objections to Defendant Stefka introducing evidence, testimony, commentary, and arguments during the course of trial disputing whether the City of Cleveland's EMS driver, Mr. Burks, complied with R.C. 4511.03, after previously finding as a matter of law that Mr. Burks complied with R.C. 4511.03.

*Assignment of Error No. 3*:

> The trial court erred in denying Plaintiff's Proposed Jury Instruction 10 and objections to [Defendant] Stefka's jury instructions 9, and in allowing the jury to decide whether the City of Cleveland EMS driver, Mr. Burks,

complied with R.C. 4511.03 (slowed down as necessary and drove with due regard for the safety of all persons using the street), after previously finding as a matter of law that Mr. Burks complied with R.C. 4511.03.