[Cite as *Pitzer v. Blue Ash*, 2019-Ohio-2889.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KALI PITZER, | : | APPEAL NO. C-180033 |
| | | TRIAL NO. A-1700361 |
| COLTON MACK, | : | |
| and | : | *O P I N I O N.* |
| MARIAH MACK, | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| CITY OF BLUE ASH, | : | |
| and | : | |
| LOUIS ERNSTES, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  July 17, 2019

*Laursen & Lucas* and *Eric W. Laursen*, for Plaintiffs-Appellants,

*Dinsmore & Shohl LLP, Gary Becker, Bryan E. Pacheco* and *Kelly E. Pitcher*, for Defendants-Appellees.

**BERGERON, Judge.**

{¶1}   This case involves an unfortunate accident in which a vehicle collided with a fire truck en route to an emergency.   But it raises the familiar issue of statutory sovereign immunity, which operates to shield first responders from tort suits unless their conduct rises to a particularly egregious level.  Construing the evidence in a light most favorable to the plaintiffs, we see no evidence that the firemen involved in this accident engaged in inappropriate conduct, and certainly nothing on the magnitude of recklessness, willfulness, or wantonness, which are needed to circumvent the immunity barrier.   Therefore, the trial court properly granted summary judgment, and we affirm its judgment.

I.

{¶2}   In March 2016, firefighters for the City of Blue Ash, Lieutenant Louis Ernstes and Michael Helms, departed the firehouse to respond to an emergency alarm.  Their route to the emergency would take them through the intersection of Kenwood Road and Glendale-Milford/Pfeiffer Road, traveling southbound.  Lieutenant Ernstes was driving the firetruck with Mr. Helms acting as his copilot.  Meanwhile, plaintiff-appellant Kali Pitzer and her two children were also headed towards the same intersection, traveling eastbound on Glendale-Milford/Pfeiffer Road.

{¶3}   As Lieutenant Ernstes approached the intersection, the fire engine's recorded video footage reveals that he sounded the vehicle's horn several times as he guided it around stopped cars and into the opposing traffic lane in preparation to cross the intersection. The firetruck at this time slowed to a near stop (the speed registering at no more than three m.p.h.), and Lieutenant Ernstes waited for several cars traveling west (i.e., towards Ms. Pitzer) to clear the intersection.   He looked both to his left and right before proceeding into the intersection and again peered to his right (the direction from which Ms. Pitzer was

2

traveling) as he moved forward. As the firetruck approached the southwest corner of the intersection, Ms. Pitzer's vehicle entered the intersection and collided with the front-right area of the firetruck.

{¶4} Ms. Pitzer suffered injuries as a result of this accident, including extensive memory loss. Indeed, she has no memory of the accident. Seeking compensation, she subsequently filed suit in January 2017 against Lieutenant Ernstes and the city of Blue Ash, as defendants. Recognizing that the city of Blue Ash and Lieutenant Ernstes were shielded from civil liability under R.C. 2744.03, in her complaint Ms. Pitzer attempted to allege conduct that would overcome the statutory tort immunity. The city of Blue Ash and Lieutenant Ernstes ultimately moved for summary judgment on immunity grounds. The trial court, relying on the footage from the firetruck, which the parties had jointly stipulated to, granted summary judgment in their favor and simultaneously denied a motion to amend the complaint filed by Ms. Pitzer. Ms. Pitzer now appeals from this ruling. Presenting two assignments of error, she contends that the trial court improperly granted summary judgment and denied the motion to amend her complaint to add Mr. Helms as a party.

II.

A.

{¶5} We of course review summary judgment determinations de novo, construing the evidence in a light most favorable to Ms. Pitzer. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. And the heart of this case involves the question of the appropriate reach of statutory sovereign immunity, and whether Ms. Pitzer can satisfy any of the statutory exceptions in order to enable her claims to reach trial.

{¶6} We begin with R.C. 2744.02(B)(1)(b), which provides that political subdivisions, such as the city of Blue Ash, can be held liable for injuries and other losses

caused by negligent operation of vehicles by their employees within the scope of the employees' employment. This provision, however, is subject to certain exceptions, which create a complete defense when:

> A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct[.]

R.C. 2744.02(B)(1)(b). Moreover, to vitiate immunity in regard to Lieutenant Ernstes individually, he must either have acted outside of the scope of his employment, or acted with malicious purpose, in bad faith, or in a wanton or reckless manner. R.C. 2744.03(A)(6).

Most of the points in this case are undisputed—the city of Blue Ash is a political subdivision, Lieutenant Ernstes and Mr. Helms were responding to an "emergency alarm," and Lieutenant Ernstes was acting within the scope of his employment (without malicious purpose or in bad faith). That thus crystalizes our inquiry to determining whether the conduct at hand constitutes willful or wanton misconduct (for Blue Ash), or wanton or recklessness operation of the fire engine (for Lieutenant Ernstes).

{¶7} As an initial matter, we note that Ms. Pitzer failed to plead in her complaint the correct standard of "willful or wanton misconduct" for the purpose of overcoming the city of Blue Ash's immunity defense pursuant to R.C. 2744.02(B)(1)(b). Instead, she framed the conduct as "negligent" or "reckless," either of which would let Blue Ash off the hook under this statute. Her failure to plead correctly, or subsequently amend the complaint to reflect this standard, barred Ms. Pitzer from raising these issues on summary judgment.

4

*Williams v. Stefka*, 8th Dist. Cuyahoga No. 96145, 2012-Ohio-353, ¶ 16 (party failed to allege willful or wanton conduct in its complaint or move to amend, and "under such circumstances a party is precluded from arguing genuine issues of material fact as to willful and wanton misconduct on summary judgment."). Neither of the standards (negligent or reckless) can pierce the sovereign-immunity defense provided by the statute.

{¶8} Even if Ms. Pitzer pleaded willful or wanton misconduct, given the evidence in the record, summary judgment for the city of Blue Ash would have been proper. The record reveals no evidence of Lieutenant Ernstes engaging in any type of willful or wanton misconduct. A finding of wanton misconduct requires "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 938 N.E.2d 266, ¶ 33 (differentiating between wanton conduct and reckless conduct). Reviewing the firetruck's video recording, it simply cannot be said that Lieutenant Ernstes failed to exercise *any* care in regard to other drivers on the road, including Ms. Pitzer. Much to the contrary, the video reveals Lieutenant Ernstes engaging the fire engine's sirens and horn as he steers it through the intersection, he slows to a near stop, allows several cars to safely pass through the intersection, looks both ways, and only then accelerates slowly through the intersection. These measures, at a minimum, demonstrate that Lieutenant Ernstes was in fact exercising care towards other drivers. The video speaks for itself, and Ms. Pitzer has not tendered any contrary evidence that would generate a material dispute of fact on this score.

{¶9} Since the video reveals that Lieutenant Ernstes's conduct was not wanton (and Ms. Pitzer has not adduced other evidence of wanton conduct), Ms. Pitzer is limited to arguing that his conduct rose to the level of recklessness to establish personal liability.

5

Recklessness, however, requires a "conscious disregard of, or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson* at ¶ 34. Again though, the video in this case corroborates Lieutenant Ernstes's and a third-party witness's statements that Lieutenant Ernstes had the fire engine's lights activated, utilized the horn to alert drivers of the vehicle's approach, slowed to a near stop before proceeding through the intersection, looked to his right twice (in Ms. Pitzer's direction) before proceeding, and moved through the intersection at a low speed. Viewing the facts in the light most favorable to Ms. Pitzer, there are simply no facts to indicate that Lieutenant Ernstes failed to recognize the inherent risk in crossing the intersection, or to take precautions reasonable under the circumstances to avoid a collision. *See Mashburn v. Dutcher,* 2012-Ohio-6283, 14 N.E.3d 383, ¶ 61 (5th Dist.) (firefighter's actions en route to emergency were not reckless when "undertaken with the good-faith belief that he was not placing * * * vehicles and the occupants in any unnecessary risk of physical harm[.]").

{¶10} Without independent evidence substantiating recklessness, Ms. Pitzer relies heavily on Lieutenant Ernstes's alleged violation of the city of Blue Ash Fire Department's administrative policies to satisfy reckless misconduct. Ms. Pitzer points to policy language which states that "[w]hen a driver * * * must use the center or oncoming traffic lanes to approach a controlled intersection * * * the driver must come to a complete stop before proceeding[.]" She argues that this language and his alleged failure to stop completely before entering the intersection generate a material dispute of fact as to his conduct. But while evidence of violations of departmental policies can be relevant to determining the culpability of a course of conduct, they do not constitute per se reckless conduct. *See Anderson* at ¶ 37 ("it is well established that the violation of a * * * departmental policy

6

enacted for the safety of the public is not per se willful, wanton, or reckless conduct"). Here, Lieutenant Ernstes was going no more than three m.p.h., and may well have come to a complete stop (the video is inconclusive on this point). Even if he ran afoul of the policy, it cannot be said that such a technical violation contributed to the accident at hand. And this is not a close call—Lieutenant Ernstes appeared to be exercising appropriate care and caution as he steered the fire truck through the intersection. As Ms. Pitzer could not adduce facts tending to show recklessness, the trial court properly granted summary judgment.

B.

{¶11} Ms. Pitzer also challenges the denial of her motion to amend her complaint to add Mr. Helms as a defendant. A party may amend its pleadings within 28 days after serving it, and in all other cases only with the other party's consent or by leave of the court. Civ.R. 15(A). The court is to freely give leave "when justice so requires." *Id.* In ruling on a motion to amend, however, the court should consider whether the moving party made a showing of support for the new matter to be pleaded, the timeliness, and the prejudice to the nonmoving party. *Danopulos v. Am. Trading II, L.L.C.,* 2016-Ohio-5014, 69 N.E.3d 157, ¶ 24 (1st Dist.). Finally, we review denial of a motion to amend under an abuse-of-discretion standard. *Id.* at ¶ 26.

{¶12} In denying the motion to amend the complaint, the trial court underscored the untimely and futile nature of the proposed amendment. Whether a motion to amend is deemed untimely is determined by the effect of the grant of such a motion on the parties and the proceedings. *See, e.g., Schaeffer v. Nationwide Mut. Ins. Co.,* 2d Dist. Greene No. 2001 CA 131, 2002-Ohio-4811, ¶ 36 (motion to amend was untimely when it was filed one month prior to trial and would have caused proceedings to effectively return to the beginning*); Frankel v. Toledo Pub. Schools,* 6th Dist. Lucas No. L-14-1027, 2015-Ohio-1571,

¶ 19 (amended complaint untimely when filed three months after first amended complaint and one week after opposing party filed motion for summary judgment).

{¶13}  Initially, we note an approximately 11-month gap between the filing of Ms. Pitzer's complaint and the motion to amend.  The motion to amend also followed two months after the summary-judgment motion.  Notwithstanding this timing, Ms. Pitzer offers no explanation for this delay other than that in reviewing the evidence, which had been available for months, she came to realize that Mr. Helms had a duty to assist Lieutenant Ernstes.  Under these circumstances, with the proceedings well underway, a summary-judgment motion pending, and no legitimate excuse for the delay, we cannot fault the trial court's timeliness determination.  Even if we could look past the timeliness problems, as should be apparent from our analysis above, the amendment could not survive a futility review.  As an employee of the city of Blue Ash's fire department, Mr. Helms is also subject to the same tort immunity as Lieutenant Ernstes.  The proposed amended complaint does not contain anything beyond conclusory allegations that would overcome the immunity bar in light of the video and other record evidence before us.  Based on the foregoing, the trial court properly denied Ms. Pitzer's motion to amend the complaint.

III.

{¶14}  As we have recognized before, sovereign immunity is often a harsh pill to swallow for victims of harm occasioned by their interaction with the government.  *Bernard v. City of Cincinnati*, 1st Dist. Hamilton No. C-180155, 2019-Ohio-1517, ¶ 35 (noting that sovereign immunity often leaves parties to manage with "extraordinary damage").  While we sympathize with Ms. Pitzer's very real injuries, the legislature has spoken directly on these circumstances and elected to provide immunity protection for first responders.  We therefore overrule her two assignments of error and affirm the judgment of the trial court.

**Judgment affirmed.**

**ZAYAS, P. J.,** and **CROUSE, J.,** concur.

**Please note:**

> **The court has recorded its entry on the date of the release of this opinion**